IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RICHARD SHAFER and
NANCY WEBB,

                    Appellants,

        v.

HEARTSPRING, INC.,
WILLIAM A. CHATTERTON, Trustee
and LOUISE KATZ,

                    Appellees.

                                      OPINION AND ORDER

                                      09-cv-125-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is an appeal from a final order of the United States Bankruptcy Court for the
Western District of Wisconsin dismissing the Chapter 13 plan of debtors-appellants Richard
Shafer and Nancy Webb.  Jurisdiction over the appeal is derived from 28 U.S.C. § 158(a)(1).
The bankruptcy judge dismissed the action after concluding that the appellants's chapter 13
plan had not been proposed in good faith.  I conclude that appellants' proposed plan fails to
compensate their unsecured creditors fairly as required by 11 U.S.C. § 1325 (a)(3).  I will
affirm the bankruptcy court's dismissal of appellants' Chapter 13 plan.

      The following summary of relevant undisputed facts and proceedings is drawn from

1

the record of the proceedings before the bankruptcy court.

FACTS

A. Appellants Fall into Debt

Appellants Richard Shafer and Nancy Webb reside in Madison, Wisconsin with their two children, who are autistic and depend on appellants for assistance and financial support. Aplts.' Tr. Exh. 6, dkt. #44, at 3.[1]  In the spring of 2004, appellants' children experienced medical complications associated with their autism that required specialized therapeutic treatment.  Id., Exh. 5, dkt. #44, at 1; Exh. 6, Tr. Exh. 6 at 3-4.  In the summer of 2004, appellants placed their children in separate residential, therapeutic programs.  Id.  The older child was placed in a residential program run by appellee Heartspring, an institution that provides comprehensive treatment for children with disabilities.  Tr. Transcript, dkt. #70, at 7.  Appellants incurred about $550,000 in expenses to Heartspring and paid about $390,000, leaving a balance of approximately $160,000.  Id., at 12.

At the time, appellants were living in California and public agencies were paying for part of the children's treatment.  Aplts.' Tr. Exh. 5, dkt. #44, at 2.  Appellants petitioned a local education agency and the human service agency of California to help pay for their child's

---

[1]All citations are to the bankruptcy court's docket, In Re the Matter: Richard Alban Frederick Shafer and Nancy Web, 03-08-1502-rdm.

treatment at Heartspring.  Id; Tr. Trans., dkt. #70, at 8.  In February 2005, appellee Louise Katz represented appellants' older child at a due process hearing.  Aplts.' Tr. Exh. 5, dkt. #44, at 2.  Appellants were unsuccessful in obtaining state aid from California agencies to pay for their older child's treatment.  Tr. Trans., dkt. #70, at 8.  They incurred $70,000 in legal fees from appellee Katz.  Aplts.' Tr. Exh. 4, dkt. #44.  As of December 22, 2008, they had paid her $53,733.  Id.

In early 2005, appellant Shafer took a job in Madison, Wisconsin.  Id. at 2.  In February 2005, the family bought a home in Madison.  Id. at 4.  Between February and November, 2005, appellants renovated, repaired and modified their new home to fix hidden defects as well as make the home accessible for their children.  Id.; Tr. Trans. dkt. #70, at 13.  These renovations cost appellants nearly $440,000.  Aplts.' Tr. Exh. 4, dkt. #44.  As of December 22, 2008, appellants have paid ABC Builders, the construction company, about $403,000.  Id.

The work on the property increased the house's fair market value by $248.000.  Aplts.' Tr. Exh. 6, dkt. #44, at 4.  In October of 2005, Shafer took out a second mortgage on the family's home of $200,000; the mortgage was secured by the increased value of the home.  Id. at 4; Tr. Trans. dkt. #70, at 15-16.  Shafer used the proceeds of that mortgage to pay creditors, including appellees Heartspring and Katz.  Aplts.' Tr. Exh. 6, dkt. #44, at 5, 9.

3

B.  Bankruptcy Filing

On September 13, 2008, appellants Shafer and Webb filed a chapter 13 bankruptcy petition in the Western District of Wisconsin.  They had filed two previous chapter 13 cases in 2007.  The first was dismissed voluntarily and the second was dismissed by the court after a hearing on confirmation of the plan.  Before submitting their first bankruptcy plan in 2007, appellants asked family members for roughly $36,000 to pay off debts to ABC Builders, the law firm that represented them in Wisconsin due process hearings and appellee Heartspring. Tr. Trans., dkt. #70, at 10-11.

In their proposed Chapter 13 plan, appellants will make 60 payments of $1,000 a month to their unsecured creditors, including appellees Heartspring and Katz.  Id. at 20. Appellants have a monthly income of $10,717.50. Using the means test set out in 11 U.S.C. § 1325(b)(2), appellants have $267.50 in monthly disposable income.  Dkt. #14.  In addition, appellants plan to pay a $14,000 lump sum payment funded by liquidating one of their individual retirement accounts.  Tr. Trans., dkt. #70, at 20.  Appellants owe about $300,000 to their unsecured creditors, which include Heartspring and Katz.  Appellants' Tr. Exh. 4, dkt. #44.

At the time of filing, the fair market value of appellants' home was $565,000, id. at 46, and they owe $497,000 in mortgages on this house.  Summary of Schedules, dkt. #13, at 1 and 3.  Appellants have no plans to sell their home because they believe they could not

4

secure credit and the cost of renting would be greater than their mortgage payments. Tr. Trans., dkt. #70, at 20-21.  Currently, appellants rent out a room in their home for $425 a month.  Id., at 19.

Appellants Shafer and Webb have identical ERISA retirement accounts that were funded between 1985 and 2004.  Aplts.' Tr. Exh. 6, dkt. #44, at 7; Tr. Trans., dkt. #70, at 17.  Under the rules and policies of the accounts, Shafer and Webb cannot make early withdrawals from the account, borrow money from the account or even "cash in" the account upon retirement.  Aplts.' Tr. Exh. 6, dkt. #44, at 7.  In addition, disbursement from the account are not available until either Shafer or Webb retires.  Tr. Trans., dkt. #70, at 17. At the time appellants filed their petition, Shafer's retirement account contained almost $1 million dollars.  Id.

## C.  Bankruptcy Court's Decision

On December 22, 2008, a final hearing on confirmation of appellants' Chapter 13 plan was held before the Honorable Judge Robert Martin.  Judge Martin dismissed the chapter 13 plan on the ground that the plant had not been proposed in "good faith."  The judge concluded the following in relevant part:

> The evidence today emphasizes that . . . there's something attractive about being able to say the Means Test requires a payment of a certain size. Therefore, it's a great deal more than needs to be paid.  That's a very

misleading statement.

In fact, there is equity in the house, even though it's a very expensive house in terms of the amount of mortgage that's on it, there is equity in it and the equity exceeds by considerable amount the homestead exemption . . . [T]hat amount would have to be paid to meet the best interest test.

***

In fact, the payments proposed under this plan barely exceed the amount that would be necessary to . . . exceed the best interest test.  So, in fact, there really, even [if] it's touted as being a generous plan, it isn't particularly.

Now, I'm deeply troubled by the suggestion and the pattern that's been establish here that somehow someone can buy good faith; that if the first price offered isn't sufficient that all you have to do is offer more. . . . [T]he amount offered still doesn't exceed by any significant amount that would be necessary for the best interest test.

***

[T]he history of this case is one of bargaining for good faith, we'll pay as little as we can.  If that doesn't work we'll pay a little bit more.  This is the fourth try and it certainly is a bigger payment than we've had before, but I'm not satisfied that it reflects a desire to pay the creditors.  Granted, the evidence cuts both ways.

The fact that they did pay a fair amount before they started into bankruptcy indicates that the bankruptcy wasn't planned.  It wasn't bad faith in the sense that it was debts [that] were run up with the anticipation of filing bankruptcy.  There was apparently a crisis . . . But the initial filing clearly indicated . . . that there was a belief they had paid enough and they didn't have to pay more.

***

I still feel that we're bargaining with what's the price of good faith.

6

I haven't heard that there is an enormous sacrifice being made. . . . It's been four tries
to see how little more would be acceptable.

Tr. Trans., dkt. #70, at 44-48.


OPINION

A.  Standard of Review

Rule 8013 of the Federal Rules of Bankruptcy Procedure states: "On an appeal, the

district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or

decree or remand with instructions for further proceedings."  A bankruptcy court's factual

findings are reviewed for clear error; its conclusions of law are reviewed de novo.  Mungo v.

Taylor, 355 F.3d 969, 974 (7th Cir. 2004); In re Thirtyacre, 36 F.3d 697, 700 (7th Cir.

1994).  In this case, appellants concede that no factual disputes exists and that the only issue

is how the "good faith" standard is applied to the facts.  Accordingly, the question is solely

one of legal interpretation.


B.  The "Good Faith" Standard

11 U.S.C. §1325 governs confirmation of Chapter 13 plans.  In relevant part, it

provides that "the court shall confirm a plan if . . . the plan has been proposed in good faith

and not by any means forbidden by law."  11 U.S.C. § 1325(a)(3).  "The term, 'good faith,'

is not defined in the Code or in its legislative history, and courts have said that no precise or comprehensive definition is possible." Matter of Smith, 848 F.2d 813, 817 (7th Cir. 1988); see also In re York, 282 B.R. 519 (Bankr. M.D. Ga. 2002);  In re Johnson, 346 B.R. 256 (Bankr. S.D. Ga. 2006).

The Court of Appeals for the Seventh Circuit has held repeatedly that the "good faith" inquiry under section 1325(a) depends on the totality of the circumstances. Matter of Love, 957 F.2d 1350, 1355 (7th Cir. 1992)("[T]he good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court."); In re Schaitz, 913 F.2d 452, 453 (7th Cir. 1990); Matter of Smith, 848 F.2d 813 at 817.  In In Re Rimgale, 669 F.2d 426 (7th Cir. 1982), the court of appeals listed the following relevant factors:

> (1) Does the proposed plan state [debtor's] secured and unsecured debts accurately?
>
> (2) Does it state [debtor's] expenses accurately?
>
> (3) Is the percentage of repayment of unsecured claims correct?
>
> (4) If there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court?
>
> (5) Do the proposed payments indicate "a fundamental fairness in dealing with one's creditors"?

Id. at 432-33.  However, of all these factors, the court has held that "the most fundamental and encompassing is whether the debtor has dealt fairly with his creditors."  In re Schaitz,

8

913 F.2d at 453.  In other words, the central question for the bankruptcy court is whether the debtor is trying to pay his creditors or merely thwart them.  See also In re Jernigan, 130 B.R. 879, 894 (Bankr., N.D. Okla. 1991) ("the question would . . . be whether a debtor who admittedly needs or deserves relief . . .under Ch. 13 has proposed a plan which would treat debtor and creditors in a manner consistent with Ch. 13 purposes and policies").  "'A sincere effort at repayment' is a sine qua non of good faith."  Schaitz, 913 F.2d at 453-54.

Appellants contend that the bankruptcy court erred by finding that their proposed plan failed to meet the "good faith" standard of 11 U.S.C. §1325.  Appellants argue that their record indicates that their fourth plan was proposed in good faith because (1) their debts were incurred as a result of the unexpected medical needs of their children with disabilities; (2) they proposed a plan that provides for payments in excess of their monthly disposable income; and (3) they have made repeated efforts to repay creditors.  Appellants contend that a proposal of four times the amount required by the disposable income test demonstrates "an exceptional effort to pay creditors" and that the language of the bankruptcy court's opinion indicates that they "never really had much chance to get any reasonable plan confirmed."

Only appellee Heartspring has filed an opposition  brief in this case.  It argues that the evidence shows that appellants proposed their plan as a means of avoiding paying their debts to their creditors.  In addition, Heartspring argues that appellants' unsecured debt exceeds the Chapter 13 limit.  However, Heartspring never raised this issue in the bankruptcy court

and therefore, it has waived it.  King v. Illinois State Board of Elections, 410 F.3d 404, 424 (7th Cir. 2005)("Issues not raised below are waived on appeal.").

Because the facts in this case are undisputed, the only issue on appeal is whether the bankruptcy judge properly applied those facts to the "good faith" standard.  The bankruptcy judge reached his conclusion because he found that appellants were trying to avoid paying the full amount of their unsecured debt when it appeared that they could pay more than they had proposed.

After reviewing the record, I concur with the bankruptcy judge.  Appellants do not appear to have filed for bankruptcy protection as result of reckless financial decisions but rather because of unexpected expenses related to their children's disabilities.  However, when looking at appellants' assets, debts and proposed payment plan in totality, it appears that the proposed plan is an effort to avoid paying their debt.

Appellants owe nearly $300,000 in unsecured debt to various creditors, including Heartspring and Katz.  The proposed plan proposes to pay a total of $74,000 to these creditors.  This represents roughly 25% of their remaining debt, or roughly a quarter on every dollar they owe.  These creditors would be out nearly $225,000.

The mere fact that a Chapter 13 plan does not propose to pay the full debt does not warrant dismissal.  In Re Rimgale, 669 F.2d at 430-31 (arguing that purpose of Chapter 13 would be undermined if unsecured creditor could oppose it on ground that plan did not pay

10

full debt).  However, the "good faith" inquiry requires a court to consider whether a reduced payment is fair in light of the debtors' financial situation.  In this case, it appears that appellants are not dealing fairly with their creditors.  In re Rimgale, 669 F.2d at 432 ("the courts should be mindful of the fact that the unsecured creditors must rely on the court to give meaning to the congressional intent that they receive substantial payments").  Appellants ask the bankruptcy court to approve a plan that will excuse them from paying $225,000 they owe while they retain a retirement account of nearly $1 million and a home that is valued at $565,000.  Moreover, appellants earn a combined annual income of nearly $130,000.  In short, appellants are not in dire straits financially.

In addition, appellants have taken the approach of minimizing the payments they would make in each proposed Chapter 13 plans and slowly increasing the total payment to creditors after each plan is rejected.  This weighs against a finding that they making a "good faith" effort to treat their creditors fairly.  As Judge Martin put it, appellants appear to be negotiating a debt settlement rather than trying to propose a fair plan.

Appellants argue that their offer of $1,000 a month to pay off their debt is quite generous considering they have only $267.50 in disposable income a month and that this somehow creates a presumption of "good faith."  Although an offer to pay four times the amount of one's disposable income appears to be generous, the offer cannot be viewed in isolation.  In re Rimgale, 669 F.2d at 432 ("the bankruptcy court must consider the debtor's

11

entire circumstances to determine whether his plan proposes to make meaningful payments to unsecured creditors"). Appellants have a number of additional assets, some of which they claim they cannot (or choose not to) liquidate or sell for the purpose of extinguishing their debt. For example, although appellants contend that their home has no equity because they owe $497,000 in mortgages, the bankruptcy court found equity in the home that could be used towards paying creditors. I am not suggesting that appellants need to sell their home to make an acceptable offer. However, they may have to make some sacrifice. They cannot expect the court to forgive their debt while they keep their property and other assets undisturbed. Chapter 13 requires the court to consider the interest of unsecured creditors, too.

Appellants also argue that they have made a sincere effort to pay their debts by paying $36,000 to their creditors before they filed their first bankruptcy plan. This shows an effort to extinguish their debt, but it does not establish that their proposed plan treats creditors fairly. Instead, it shows that appellants might have alternative means of paying off their debt. In addition, the fact that appellants paid this amount immediately before filing their first bankruptcy plan suggests that they were trying to reduce their debt to below $336,900 to qualify as debtors under Chapter 13. 11 U.S.C. § 109(e). Whatever the case may be, these previous payments do little to suggest that appellants' current plan was proposed in good faith.

12

Because I conclude that appellants' proposed plan is not a good faith effort to pay their unsecured creditors fairly in light of the appellants' overall financial situation and assets, I will affirm the bankruptcy court's denial of their Chapter 13 plan.


ORDER

IT IS ORDERED that the decision of the bankruptcy court dismissing appellants Richard Shafer and Nancy Webb's Chapter 13 plan is AFFIRMED.

Entered this 24th day of August, 2009.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

13